## DALE F. AND KAREN H. PATTY *v.* DEPARTMENT OF REVENUE

Plaintiffs appeared in propria persona.

Defendant appeared by and through Ted E. Barbera, Assistant Attorney General, Salem.

Decision for defendant rendered October 17, 1973.

CARLISLE B. ROBERTS, Judge.

The plaintiffs appeal from the Department of Revenue's Order No. I-73-9, dated February 13, 1973, assessing a deficiency in plaintiffs' income tax for the year 1969.

The facts have been stipulated by the parties and the case submitted on briefs.

In 1966, the plaintiffs sold their California home and moved to Oregon. A gain of $11,123 was realized on the sale of the California residence, but it was deferred and the original basis carried forward for federal income tax purposes. The taxpayers purchased and occupied a new residence in Oregon within the time prescribed by the Int Rev Code of 1954, § 1034 (a).

The cost of the Oregon home was $43,135. Pursuant to the provisions of the Internal Revenue Code, the basis of the Oregon residence was adjusted by subtracting the deferred gain, resulting in an adjusted federal basis of the Oregon home of $32,012. Int Rev Code of 1954, § 1034 (e) ; Treas Reg § 1.1034-1 (e).

In 1969, the plaintiffs sold their Oregon home for the sum of $44,862, and moved to Louisiana where they purchased a residence. On their federal income tax return for 1969, the plaintiffs deducted the adjusted basis of their Oregon home from its sale price, and reported a gain of $12,850. They again elected to defer tax on the gain for federal tax purposes.

The plaintiffs reported to Oregon's Department of Revenue a net gain on the sale of their Oregon home of $1,604, representing the difference between the home's original purchase price of $43,135 and its sale price of $44,862, less fixing-up expenses of $123.

The Department of Revenue's auditor recomputed the gain on the sale of the Oregon residence, using the adjusted federal basis of $32,012. This adjustment resulted in an increase in adjusted gross income and a corresponding decrease in the allowable medical deduc-

tion. The auditor's adjustments were affirmed on plaintiffs' appeal to the Department of Revenue. In its order, the defendant relies on ORS 316.062 which provides:

> "The entire taxable income of a resident of this state is his federal taxable income as defined in the laws of the United States, with the modifications, additions and subtractions provided in this chapter."

The order then points out that ORS 316.067's list of modifications contains nothing which would permit a change in federal taxable income by adjusting the basis to be used in computing the gain on the sale of a personal residence. The department's regulation, Reg 316.062, duly promulgated on December 31, 1969, provides:

> "Ordinarily, the taxable income of a resident is the resident's federal taxable income as modified by ORS 316.067. However, for a person who may leave the state, or for an Oregon resident who owns property or acquires property outside the State of Oregon by means of a tax-free or partially tax-free exchange, attention is called to ORS 314.290 which limits the deferral of the recognition of gain to those situations where property newly acquired by the taxpayer has a situs within the jurisdiction of the State of Oregon. Under ORS 314.290, the federal taxable income may require adjustment where newly acquired property is acquired outside the jurisdiction of the State of Oregon. In such case, the federal taxable income shall be adjusted to reflect this nondeferral of tax recognition of gain."[1]

---

[1] Although the question was not raised by the parties, the court has found it necessary to inquire whether ORS 314.290 could affect ORS ch 316, having in mind the provisions of ORS 316.002 and 316.062. The court's conclusion that they are in pari materia is bolstered by the retroactive provisions of Oregon Laws 1973, ch 88, § 1.

Relying on these provisions, the plaintiffs were ordered to carry over their federal basis from the California residence to the Oregon residence and to pay tax upon the gain thus measured upon the sale of the Oregon residence in 1969. No relief could be obtained from ORS 316.047 since this relates only to the prohibition of "double taxation" or "double deduction" of Oregon income. *Rinehart v. Dept. of Rev.*, 5 OTR 210 (1973). See also Department of Revenue's regulation, Reg 316.047-(A).

The question presented for the court's decision, therefore, is: What was the legal basis of plaintiff's home in Oregon for Oregon personal income tax purposes, at the time the home was sold in 1969?

The case involves the construction of ORS ch 316, the Personal Income Tax Act of 1969, and of ORS 314.290, and claims of unconstitutionality in their application by the defendant.

Plaintiffs point out that, when they sold their home in California in 1966, they would have been taxed upon a capital gain for federal income tax purposes had there been no federal provision for deferring the taxation of such a gain, and that by carrying forward the federal basis in the California property as Oregon's basis, Oregon, in essence, is retroactively creating "paper income" in Oregon and the end result is the attempted taxation by Oregon of income acquired in consequence of a taxable event in the State of California. A further argument is that such an imposition by Oregon is a discrimination against the freedom of movement which the U. S. Supreme Court has held unconstitutional. They also distinguish cases cited by defendant as being applicable only to persons who were residents throughout the tax years in question,

whereas plaintiffs were nonresidents when their federal basis was established.

On the authority of decisions in similar cases, the court is forced to take a different view of the transaction than that of the plaintiffs. It appears that the legislative intent was to base its tax, subject to specific modifications, on the plaintiffs' federal taxable income for 1969.

■ ■ The plenary power of the state to impose taxation is well established. See the cases cited in *Smith v. Dept. of Rev.,* 5 OTR 249 (1973). Domicile, in itself, establishes a basis for taxation. *Lawrence v. State Tax Commission,* 286 US 276, 52 S Ct 556, 76 L Ed 1102, 1 STC 93, ¶ 226, 87 ALR 374 (1932). The state, beginning in 1969, in the case of residents, determined to use as a measure for personal income tax purposes the resident's "entire taxable income" "as defined in the laws of the United States," with modifications which are not applicable in this suit. ORS 316.062. A resident's basis in a personal residence, then, would be the federal basis. Upon the sale of the property by the resident, with the proceeds used to purchase a personal residence in another state, ORS 314.290 prevents deferral of taxation on the taxable event which took place during the plaintiffs' Oregon residency. This violates no constitutional provision of the State of Oregon and is not unconstitutional under the U. S. Constitution, Amend XIV, as asserted by plaintiffs. *Altsular v. Peters,* 190 Neb 113, 206 NW2d 570 (1973); *Marco Assoc. v. Comptroller,* 265 Md 669, 291 A2d 489, CCH STC Rep ¶ 250-093 (1972); *Katzenberg v. Comptroller,* 263 Md 189, 282 A2d 465, CCH STC Rep ¶ 250-059 (1971). The state's power to include in the measure of income an economic

increment gained by a former nonresident, now a resident, is adverted to in *Grote v. Tax Commission,* 251 Or 251, 256, 445 P2d 129 (1968), where the statute provides for it. There is no question as to the state's power when the chose in action which accompanies the former nonresident as he enters the state is common stock; the plaintiffs' property interest in a federal deferral of gain on sale of real property reaches no higher level.

In each of the cases cited (other than *Grote*), the situation was one in which the taxing state had adopted federal definitions of income. In consequence, in the *Altsular* case, *supra,* a payment on an installment contract received during the tax year was includable in computation of state income tax for that year, even though the installment contract had been entered into in an earlier year and the gain was technically "realized" in that year. The court found that by enacting into law an income tax based on the federal income tax liability for the taxable year, income was "realized" in the year when it was "received" and so becomes taxable under federal law.

The case also held that the portion of the gain on the sale of a capital asset represented by appreciated value accruing prior to the effective date of the state income tax act was nevertheless subject to tax and the tax did not violate the U. S. Constitution, Amend XIV, § 1, citing *MacLaughlin v. Alliance Ins. Co.,* 286 US 244, 250, 52 S Ct 538, 76 L Ed 1083, 1086, 11 AFTR 8 (1932), and quoting that case as follows:

> "* * * The tax being upon realized gain, it may constitutionally be imposed upon the entire amount of the gain realized within the taxable period, even though some of it represents enhanced value in an

earlier period before the adoption of the taxing act. * * *"

In *Marco Assoc., supra,* the court held that the imposition of a state income tax on corporate capital gains attributable, for federal income tax purposes, to 1968 installment payments on a 1964 sale of real property did not constitute a prohibited attempted imposition of retroactive tax under 1967 amendments to the income laws (adopting the federal definition of taxable income), notwithstanding that the property had been sold in 1964 when the gain was "realized." The court stated: "The thrust of this argument is that a statute which seeks to impose a tax in 1968 upon a transaction entered into in 1964 is impermissibly retroactive" (at 672) and then quoted from the *Katzenberg* case, *supra*:

> " 'As we understand this argument, it is in essence that the gain was realized when the notes in question were accepted by the Katzenbergs, and that the imposition of the Maryland tax on the proceeds collected in satisfaction of the notes is tantamount to the imposition of a tax on the collection of a debt.

> " 'We do not see it quite that way. Under our view, the existence of a capital gain was realized when the sales were made (assuming the notes were paid or could be disposed of), but the Katzenbergs preferred to defer the recognition of the gain for federal tax purposes until the time when and if the notes were paid or otherwise disposed of. It was the deferral of some part of this recognition until the years 1967 and 1968, when the Maryland Act was fully operative which brought the gains recognized in those years within the scope of the Act.' * * *"
> [*Marco Assoc. v. Comptroller,* 265 Md 669, 673, 291 A2d 489, 492 (1972).]

The court again quotes from *Katzenberg, supra,* in a manner relevant to the subject case:

> " 'It seems to us that the State has the better of this argument when it says that the Act uses as a base an individual taxpayer's adjusted gross income reported for federal income tax purposes, with certain additions and subtractions. The Act is not directed at payments received from installment sales before the date of its enactment. Neither does it purport to be a tax on capital gains as such or a tax on installment payments as such. It is rather a tax measured by the yardstick of income reported for federal tax purposes, whether capital gains be reflected in this figure or not. * * *'
>
> "* * * * *
>
> " 'It is undoubtedly true that the General Assembly, had it seen fit to do so, could have imposed a tax on a taxpayer's gross income, without considering the source from which it came, whether it be earnings, investment income or profits realized from the sale of capital assets, and without granting exemptions, allowing deductions or permitting any other adjustments. If it could validly do this, and we think it could, there is no reason to doubt that it could select some other figure, objectively arrived at, upon which the tax could be based, Tawes v. Strouse, 182 Md 508, 512-513, 35 A2d 233 (1943). It did this when it chose to base the tax on the figures for adjusted gross income and taxable income, as developed by the federal returns.' 263 Md at 205-206, 282 A2d at 473." [*Marco Assoc. v. Comptroller,* 265 Md 669, 676-677, 291 A2d 489, 493-494 (1972).]

The court goes on to say that the Maryland income tax is structured in a way that focuses on the taxable income of a corporation, or the adjusted gross income of an individual, as the same is developed in the taxpayer's federal income tax return, subject to the modi-

fications permitted by the act, "whether a federal tax is or is not generated by the federal return."

In *Katzenberg, supra,* the court held that the amendment of state income tax laws by adopting as a base for state income tax purposes the adjusted gross income as an individual taxpayer and taxable income of a corporate taxpayer, as found under the federal Internal Revenue Code, thus bringing capital gains and losses within the ambit of the state income tax, was not unconstitutionally arbitrary on the theory that it made state tax liability dependent upon the exercise of reporting options, years previously, under a different taxing scheme rather than on the substance of the transactions.

This court finds that these principles are applicable in the present suit. The court agrees that Oregon could not have taxed the California gain in the California capital asset if the plaintiffs had not moved to Oregon. The fact remains that the plaintiffs did move to Oregon and Oregon's personal income taxes (beginning in 1969) are not measured by the capital gain as such but upon what is included in "federal taxable income" for the tax year in question.

The court agrees with the plaintiffs that a state must have some connection with a transaction before it can have the authority to tax. Here the state had the strongest connection for tax purposes, the fact that the plaintiffs were domiciliaries of Oregon when they sold their Oregon residence and this was included in the period reported for 1969 federal income tax purposes.

The plaintiffs have contended that ORS 314.290 is discriminatory, apparently on the assumption that it treats residents and nonresidents differently. This is not true. ORS 314.290 covers all of the situa-

tions under the income tax laws where there is a deferral of tax recognition of gain upon the voluntary or involuntary conversion or exchange of tangible real or personal property. It limits the deferral to those instances where the property newly acquired by the taxpayer has a situs within the jurisdiction of the State of Oregon. It applies to residents and nonresidents alike where the property transferred by the taxpayer has a situs in Oregon. In the present case, it applies to the deferral of recognition of gain upon the sale of Oregon property by Oregon residents and subsequent purchase of Louisiana property.

All of plaintiffs' cases have been carefully examined by the court and are deemed to be distinguishable. Whether provision should be made, as a matter of policy, to avoid measuring taxes on a base which includes out-of-state increments is a matter for the Legislative Assembly. No specific authority has been presented which clearly shows it to be unconstitutional.

The defendant's order is affirmed.